SRI CLYDE COLLINS,

                    Plaintiff,          05 Civ. 7484 (JGK)

        - against -                     OPINION AND ORDER

GLENN S. GOORD, et al.,

                    Defendants.

**JOHN G. KOELTL, District Judge:**

The plaintiff, Sri Clyde Collins, brings this pro se action under 42 U.S.C. § 1983 against New York State Department of Correctional Services Commissioner Glenn S. Goord ("Goord"), Fishkill Correctional Facility ("Fishkill") Superintendent William Mazzuca ("Mazzuca"), Fishkill Law Library Administrator Carlton Good ("Good"), Fishkill Law Library Supervisor Colleen Manning ("Manning"), and Fishkill Law Library Supervisor Gene McConnell ("McConnell"). The plaintiff is a former inmate who was incarcerated at Fishkill between March 22, 2005 and August 25, 2005. His Amended Complaint alleged claims for denial of access to the courts, deprivation of property without due process, and retaliation for the exercise of constitutionally protected rights. On the defendants' motion to dismiss, which was then converted into a motion for summary judgment for the purpose of determining exhaustion, Chief Judge Mukasey dismissed all of the plaintiff's claims except for one of the plaintiff's

denial of access to the courts claims and the retaliation claim.
See Collins v. Goord, 438 F. Supp. 2d 399 (S.D.N.Y. 2006).  The
defendants now move for summary judgment dismissing the
remainder of the plaintiff's claims.

I.

The standard for granting summary judgment is well
established.  Summary judgment may not be granted unless "the
pleadings, the discovery and disclosure materials on file, and
any affidavits show that there is no genuine issue as to any
material fact and that the movant is entitled to judgment as a
matter of law."  Fed. R. Civ. P. 56(c); see also Celotex Corp.
v. Catrett, 477 U.S. 317, 322 (1986); Gallo v. Prudential
Residential Servs. Ltd. P'ship, 22 F.3d 1219, 1223 (2d Cir.
1994).  "[T]he trial court's task at the summary judgment motion
stage of the litigation is carefully limited to discerning
whether there are genuine issues of material fact to be tried,
not to deciding them.  Its duty, in short, is confined at this
point to issue-finding; it does not extend to issue-resolution."
Gallo, 22 F.3d at 1224.  The moving party bears the initial
burden of informing the district court of the basis for its
motion and identifying the matter that it believes demonstrates
the absence of a genuine issue of material fact.  Celotex, 477
U.S. at 323.  The substantive law governing the case will
identify those facts that are material and "only disputes over

2

facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

Summary judgment is appropriate if it appears that the non-moving party cannot prove an element that is essential to the non-moving party's case and on which it will bear the burden of proof at trial. See Cleveland v. Policy Mgmt. Sys. Corp., 526 U.S. 795, 805-06 (1999); Celotex, 477 U.S. at 322; Powell v. Nat'l Bd. of Med. Exam'rs, 364 F.3d 79, 84 (2d Cir. 2004). In determining whether summary judgment is appropriate, a court must resolve all ambiguities and draw all reasonable inferences against the moving party. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (citing United States v. Diebold, Inc., 369 U.S. 654, 655 (1962)); see also Gallo, 22 F.3d at 1223. Summary judgment is improper if there is any evidence in the record from any source from which a reasonable inference could be drawn in favor of the nonmoving party. See Chambers v. T.R.M. Copy Ctrs. Corp., 43 F.3d 29, 37 (2d Cir. 1994). If the moving party meets its initial burden of showing a lack of a material issue of fact, the burden shifts to the nonmoving party to come forward with "specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e)(2). The non-moving party must produce evidence in the record and "may not

rely simply on conclusory statements or on contentions that the affidavits supporting the motion are not credible." Ying Jing Gan v. City of New York, 996 F.2d 522, 532 (2d Cir. 1993); see also Scotto v. Almenas, 143 F.3d 105, 114-15 (2d Cir. 1998); Singh v. New York City Off-Track Betting Corp., No. 03 Civ. 5238, 2005 WL 1354038, at *1 (S.D.N.Y. June 8, 2005).

Where, as here, a pro se litigant is involved, although the same standards for dismissal apply, a court should give the pro se litigant special latitude in responding to a summary judgment motion. See McPherson v. Coombe, 174 F.3d 276, 279 (2d Cir. 1999) (courts "read the pleadings of a pro se plaintiff liberally and interpret them 'to raise the strongest arguments that they suggest'") (quoting Burgos v. Hopkins, 14 F.3d 787, 790 (2d Cir. 1994)). In particular, the pro se party must be given express notice of the consequences of failing to respond appropriately to a motion for summary judgment. See McPherson, 174 F.3d at 281; Vital v. Interfaith Med. Ctr., 168 F.3d 615, 620-21 (2d Cir. 1999); Champion v. Artuz, 76 F.3d 483, 486 (2d Cir. 1996); Ruotolo v. IRS, 28 F.3d 6, 8 (2d Cir. 1994); Graham v. Lewinski, 848 F.2d 342, 344 (2d Cir. 1988). Express notice of the consequences of a failure to respond was provided to the plaintiff, and the plaintiff did file a timely response to the defendants' motion for summary judgment, including a declaration by the plaintiff in response to the motion.

**II.**

The factual allegations in this case are detailed in the prior opinion by Chief Judge Mukasey, Collins, 438 F. Supp. 2d at 403-08.  Familiarity with that opinion is assumed, and details are recounted here as necessary to decide the defendants' motion for summary judgment.  The following facts are undisputed unless otherwise indicated.

**A.**

The events giving rise to the plaintiff's claims began in early 2005, while he was an inmate at Gowanda Correctional Facility ("Gowanda").  On February 22, 2005, the plaintiff was twice observed allegedly committing various prison rule violations by two different corrections officers.  (Defs.' Ex. B.)  On February 24, the plaintiff was served with two Inmate Misbehavior Reports for the incidents.  (Defs.' 56.1 Statement ¶ 25; Defs.' Ex. B.)  The plaintiff appeared at a disciplinary hearing from February 27 to March 6 to face the charges against him.  (Defs.' 56.1 Statement ¶ 25; Collins Dep. 26.)  At the conclusion of the hearing, the hearing officer found the plaintiff guilty of all of the charges.  (Defs.' 56.1 Statement ¶ 25; Defs.' Ex. B.)  The hearing resulted in disciplinary sanctions against the plaintiff, including six months of confinement in a Special Housing Unit ("SHU").  (Defs.' 56.1 Statement ¶ 1; Collins Dep. 23.)  On April 26, the hearing was

reviewed and the findings of guilt affirmed on administrative
appeal. (Defs.' 56.1 Statement ¶ 28; Defs.' Ex. B.) The
plaintiff served the first seventeen days of SHU confinement at
Gowanda and then was transferred to Fishkill on March 22.
(Defs.' 56.1 Statement ¶ 29; Collins Dep. 34-35.) The plaintiff
remained in SHU the entire time of his confinement at Fishkill
until August 25, when he was transferred to Oneida Correctional
Facility ("Oneida") by way of Ulster Correctional Facility
("Ulster"). (Defs.' 56.1 Statement ¶ 3, 29; Collins Dep. 22-
24.) The plaintiff was released from Oneida on June 2, 2006.

**B.**

On March 18, 2005, while still incarcerated at Gowanda, the
plaintiff filed an Article 78 petition in Erie County Supreme
Court. (Defs.' 56.1 Statement ¶ 1; Defs.' Ex. D.) The Article
78 petition sought expungement of the disciplinary sanctions
imposed upon the plaintiff pursuant to the disciplinary hearing
held at Gowanda. (Defs.' 56.1 Statement ¶ 1; Defs.' Ex. D.)
The main allegations in the petition are that the respondents
violated N.Y. Corrections Law § 138[5] and due process because
they failed to provide him with new and contemporaneous copies
of the prison rules and regulations books and did not post the
rules and regulations in a conspicuous location. (Defs.' Ex.
D.)

On April 13, 2005, Justice Townsend issued an Order to Show
Cause ("OTSC") to compel Gowanda officials to explain why the
penalties arising from the plaintiff's disciplinary conviction
should not be expunged from his records. (Defs.' 56.1 Statement
¶ 4.) The OTSC directed the plaintiff to effect "service of a
signed and executed copy of this Order to Show Cause, the
petition and any supporting papers . . . upon the named
respondents" and upon the State Attorney General on or before
April 29, 2005. (Defs.' 56.1 Statement ¶ 5, Defs.' Ex. D.) The
plaintiff was required to file proof of service at least eight
days before the return date. (Defs.' 56.1 Statement ¶ 5, Defs.'
Ex. D.) The OTSC was returnable on June 3, 2005 before Justice
Drury in Erie County Supreme Court. (Defs.' 56.1 Statement ¶ 4;
Defs.' Ex. D.) The OTSC specified that the matter would be
decided "on all papers submitted to the Court prior to said
return date." (Defs.' Ex. D.)

While at Fishkill, the plaintiff wrote a letter dated April
18, 2005 ("April 18 letter"), addressed to "Law Library –
Fishkill Correctional Facility," requesting advance funds to
make six photocopies of the OTSC and other supporting papers,
which contained twenty-five pages, to serve upon the
respondents. (Pl.'s Ex. A-1; Pl.'s Ex. C-6.) The April 18
letter appears to respond to a memorandum from the Fishkill Law
Library, dated April 17, denying an earlier request from the

plaintiff for an advance for photocopies.[1]  The subject line of
the April 18 letter reads: "Your Memo of 4/17/05 per 'Advances
for legal copies – Anticipated need for advances and
encumbrances due to active cases," and the second paragraph
states his belief that the memorandum overlooked a policy,
Directive No. 4483, that would have provided him with an
advance.  (Pl.'s Ex. A-1.)  Directive No. 4483, dated March 28,
2002, provides in pertinent part:

> An inmate lacking sufficient funds may not receive
> photocopying services unless the Law Library Supervisor, in
> consultation with the Law Library Administrator or
> Counsel's Office, approves an encumbrance for same.
> Encumbrances will only be authorized for photocopies of
> specific documents that are required by the courts that
> cannot be replicated longhand.

(Pl.'s Ex. A-3.)  The Directive provides that all photocopying
requests be accompanied by a disbursement form (IAS 2706) and
that the disbursement forms must be forwarded to the Business
Office.  The April 18 letter continues:  "I believe I qualify
for such relief as the proposed documents would be required by
the courts and they cannot be replicated longhand."  (Pl.'s Ex.
A-1.)  A memorandum to the plaintiff from the Fishkill Law
Library, dated April 21 ("April 21 memorandum"), appears to
respond to the April 18 letter and notifies the plaintiff: "You
need to inform the Court that you don't have funds to make

---

[1] Neither the plaintiff nor the defendants have produced a copy of the
April 17 memorandum nor any other communications between the plaintiff and
Fishkill Law Library staff before that date.

copies to serve the Respondents." (Defs.' Ex. A.) The April 21 memorandum appears to be signed "L.S." (Defs.' Ex. A.; Collins Dep. 50-54.)

The plaintiff did receive one free photocopy of the OTSC, which was accompanied by a handwritten note from Heady, the plaintiff's inmate counselor, stating, "As per SCC Good, this was a one shot deal no future free copies!" (Defs.' 56.1 Statement ¶ 8; Pl.'s Ex. C-3; Collins Dep. 57-59.) (emphasis in original). The plaintiff stated in his deposition that he never met or spoke with Good personally and that he typically communicated on library matters through Heady. (Defs.' 56.1 Statement ¶ 10; Collins Dep. 22, 63.) The plaintiff appears to have spoken with Manning, at the most, on one occasion. (Defs.' 56.1 Statement ¶ 11.) The plaintiff interacted with McConnell primarily by giving McConnell request slips for various legal materials. (Defs.' 56.1 Statement ¶ 10; Collins Dep. 47.) During his deposition, the plaintiff testified that he spoke directly with McConnell and tried to explain to McConnell that the OTSC required photocopies, and that McConnell responded that there was nothing he could do. (Collins Dep. 63-64.)

In a letter to Oliver Young, a court attorney for the Erie County Supreme Court, dated April 22, 2005, the plaintiff apprised the court that he was "totally without funds" to pay for the photocopies and postage necessary to effect service and

that Fishkill required a specific court order to provide the plaintiff with free photocopies. (Pl.'s Ex. B-5.) The letter enclosed the unserved OTSC and requested the court "to conform the copies and effect service on my behalf . . . ." (Pl.'s Ex. B-5.) According to the plaintiff, Young replied on May 6 and returned the OTSC to the plaintiff, informing him that the court would not make photocopies of the OTSC or serve them on the plaintiff's behalf, and advising him that he should seek an extension. (Pl.'s Ex. C-6.) In a letter to Justice Drury dated May 10, 2005, the plaintiff requested an extension of time in order to obtain the services of an attorney. (Pl.'s Ex. C-6.) It is not clear from the record if the plaintiff received a formal extension.

The plaintiff appears to have given up on his attempts to obtain photocopies of the OTSC on May 27, although the Article 78 proceeding was not dismissed at that time. In a second letter to Justice Drury, dated June 27, the plaintiff explained that he was prevented from serving the OTSC on the necessary parties because the Fishkill Law Library and administrative staff did not provide him with an advance. (Defs.' Ex. A.) The plaintiff also filed an Inmate Grievance Complaint, dated June 3 and filed on June 7, alleging that he was compelled to forego the service of the OTSC on May 27 because he did not have the funds to pay for photocopies, and that "the Law Library declined

. . . advance funds for the copies of the orders for service (5) as the court ordered. Thus . . . []cing me to return the original copy of the order and supporting papers to the court unserved!" (Defs.' Ex. A; Defs.' Ex. E.) (words replaced by ellipses obscured and emphasis in original). On June 15, the Superintendent denied the plaintiff's grievance. The denial was based on a statement by Manning, dated June 7, that the plaintiff had never communicated with her about any need for an advance, and on a statement by a supervisor, dated June 9, stating that Good had told him that he had not received any request for an advance from the plaintiff. (Defs.' Ex. A; Defs.' Ex. E.) The plaintiff appealed to the Central Office Review Committee ("CORC"). (Defs.' 56.1 Statement ¶ 17.) On July 13, the CORC unanimously affirmed the denial of the grievance. (Defs.' 56.1 Statement ¶ 17; Defs.' Ex. A; Defs.' Ex. E.) The decision of the CORC contained a message to the plaintiff advising him to contact staff to complete and submit the proper advance form to request an advance for legal photocopies, and that he would need to provide documentation of a court ordered need for photocopies and to indicate why the copies could not be made longhand using carbon paper. (Defs.' 56.1 Statement ¶ 19; Defs.' Ex. A; Defs.' Ex. E.)

The plaintiff made another request for photocopies on an Inmate Request Form, dated June 3, requesting an advance for

photocopies of legal papers in connection with a different action the plaintiff had brought in Dutchess County Supreme Court. (Defs.' Ex. A.) The plaintiff also wrote a letter to Good, dated June 3, explaining that he faced "the dilemma of defaulting" on an Order to Show Cause in the Dutchess County Action, and that he had been "likewise forced to forego a prior proceeding." (Defs.' 56.1 Statement ¶ 14; Pl.'s Ex. C-1.) The June 3 letter to Good also asks Good to authorize an advance for legal photocopies. (Pl.'s Ex. C-1.)

On July 18, the plaintiff filed another Inmate Grievance Complaint requesting to be immediately provided with a stiff-barreled pen to make longhand copies of his legal documents with carbon paper, or to be provided with free photocopies. (Defs.' Ex. A.) On July 25, the IGRC accepted the grievance, noting that an emergency order had been placed for stiff-barreled pens, but that the storehouse had only flexible pens in stock at that time. (Defs.' Ex. A.)

The plaintiff appeared to renew his attempts to secure an advance for legal photocopies in August, although the documents for which he sought copies do not appear to be related to his Erie County proceeding. A memorandum to the plaintiff from the Fishkill Law Library, dated August 10, notifies the plaintiff: "You must request forms (IAS 2708) [sic] for advance request from the INMATE BUSINESS OFFICE. Only they can grant you

advance funds and usually by court order only. Try it anyway."
(Pl.'s Ex. A-2.). This memorandum is signed "L/L" above the
printed words "Law Library Staff." A form addressed to the
plaintiff from the Fishkill Inmate Accounts Office, dated August
11, responds: "We do not advance copies. See Mr. C. Good w/
your request. He may be able to authorize the advance." (Pl.'s
Ex. C-2.) An Inmate Request Form which appears to be filled out
by the plaintiff, dated August 17, is directed to "S.C.C. Good"
and explains that the plaintiff needed an advance to make
photocopies for his pro se litigation in state and federal
court. (Pl.'s Ex. C-4.)

On August 25, 2005, the plaintiff was transferred from
Fishkill to Oneida by way of Ulster (Defs.' 56.1 Statement ¶
3.). On August 29, after arriving at Oneida, the plaintiff took
possession of a typewriter, which he had ordered in February
while at Gowanda but which he had not been allowed to possess at
Fishkill while he was in SHU. (Def.'s 56.1 Statement ¶ 34.)
The plaintiff discovered that it had been damaged. (Am. Compl.
¶ 9-11; Def.'s 56.1 Statement ¶ 34.) According to the
plaintiff, the nature of the damage suggested that the damage
had been caused intentionally and maliciously. (Am. Compl. ¶
11-13.) During the plaintiff's deposition, he stated that he
did not have any actual knowledge that Good, Manning, or
McConnell had physical access to or custody of the typewriter.

(Defs.' 56.1 Statement ¶ 34; Collins Dep. 90.)  The plaintiff further stated that his claim in connection with the typewriter was not directed at Good, Manning, or McConnell and agreed that he was in a position to withdraw that claim against those defendants.  (Defs.' 56.1 Statement ¶ 34; Collins Dep. 91.)

On November 3, Justice Drury issued an order dismissing the plaintiff's Article 78 petition for failure to serve the named respondents and the State Attorney General as required by the OTSC.  (Defs.' 56.1 Statement ¶ 6; Defs.' Ex. D.)

## C.

The plaintiff filed the Complaint in this action in August 2005, while he was incarcerated at Fishkill, and the Amended Complaint in November 2005, while he was incarcerated at Oneida. The defendants moved to dismiss the Amended Complaint, and the plaintiff moved for leave to amend the Amended Complaint to substitute Corrections Officer Gene McConnell for defendant John Doe.  Because both parties submitted materials outside the pleadings relevant to the question of whether the plaintiff's claims had been exhausted, Chief Judge Mukasey converted the motion to dismiss into one for summary judgment for the purpose of determining exhaustion.  Chief Judge Mukasey dismissed most of the plaintiff's claims on the grounds that they were either unexhausted or that the plaintiff had not alleged sufficient facts to state a claim upon which relief could be granted.

However, Chief Judge Mukasey found that the plaintiff had sufficiently alleged a claim for unconstitutional denial of access to the courts against Good, Manning, and McConnell based on the failure to advance the plaintiff funds to make photocopies of the Erie County OTSC, and a First Amendment retaliation claim against Good, Manning, and McConnell based on the destruction of his typewriter. Chief Judge Mukasey also granted the plaintiff's motion to amend the Complaint to substitute McConnell for John Doe.

**III.**

The defendants now move for summary judgment on the plaintiff's two remaining claims, namely the denial of access to the courts claim arising out of the Erie County OTSC and the retaliation claim arising out of the destruction of the plaintiff's typewriter.

**A.**

Prisoners have a First Amendment right of meaningful access to the courts that requires state prisons "to give prisoners a reasonably adequate opportunity to present claimed violations of fundamental constitutional rights to the courts." Bounds v. Smith, 430 U.S. 817, 825 (1977). However, prison administrators may place reasonable restrictions on a prisoner's constitutional rights, so long as these restrictions are "reasonably related to legitimate penological interests." Turner v. Safley, 482 U.S.

78, 89 (1987).  Prison administrators should be "afforded considerable deference" with respect to how, "in the interest of security, [to] regulate the relations between prisoners and the outside world."  Thornburgh v. Abbott, 490 U.S. 401, 408 (1989).

The constitutional right of access to the courts gives rise to a number of derivative rights, including the right to access legal materials to prepare a case, and the right of indigent inmates to be provided with paper and pens to draft legal documents and stamps to mail them.  See, e.g., Bounds, 420 U.S. at 824-28.  Unlike prisoners who bring a claim for the violation of a constitutionally protected right, who have standing to assert that right even if the denial of the right did not cause an "actual injury," prisoners who bring a claim for the violation of a derivative right of access to the courts must demonstrate "actual injury" in order to have standing.  Benjamin v. Fraser, 264 F.3d 175, 185 (2d Cir. 2001).  The actual injury requirement ensures that courts provide relief to claimants only when they have suffered or will imminently suffer actual harm and prevents courts from undertaking tasks assigned to the other political branches.  Lewis v. Casey, 518 U.S. 343, 349 (1996).

In order to establish a constitutional violation based on a denial of access to the courts, a plaintiff must show that the defendant's conduct was deliberate and malicious, and that the defendant's actions resulted in an actual injury to the

plaintiff.  Davis v. Goord, 320 F.3d 346, 351 (2d Cir. 2003).

To show actual injury, the plaintiff must demonstrate that the

defendant's conduct frustrated the plaintiff's efforts to pursue

a nonfrivolous claim.  Lewis, 518 U.S. at 353.

**1.**

The defendants first argue that summary judgment should be

granted in their favor on the access to the courts claim because

the defendants did not act deliberately and maliciously in

refusing to advance the plaintiff the funds he needed to make

photocopies of the OTSC.  The defendants assert that members of

the Law Library staff and the CORC communicated to the plaintiff

that he needed to submit "documentation showing a court ordered

need for the photocopies" and to "indicate the reason why the

copies could not be made long hand, with carbon paper."  (Defs.'

Ex. A.)  According to the defendants, the plaintiff did not

clearly respond to these communications nor explain that these

alternatives were unavailable to him.  The defendants further

assert that the plaintiff has not demonstrated that Good,

Manning, or McConnell were ever made aware that he had pursued

any of these alternatives, nor that the dismissal of the

plaintiff's Article 78 proceeding would be likely if he did not

obtain photocopies to effect service.  Thus, in denying the

plaintiff's request for an advance, the defendants intended only

"to ensure compliance with DOCS policies relating to advancing

funds for making photocopies," not to "prejudice plaintiff's litigation." (Defs.' Mem. 12.)

The defendants concede that the plaintiff's failure to serve copies of the Erie County OTSC on the respondents and on the State Attorney General caused the plaintiff's Article 78 proceeding to be dismissed, although they dispute whether their actions were the cause of that failure. Construing the evidence in the light most favorable to the plaintiff as the non-moving party, the plaintiff has presented sufficient evidence that he requested a photocopying advance from the law library on at least four occasions prior to withdrawing the OTSC on May 27. Between April 13 and April 17, the plaintiff testifies that he submitted a form to the Law Library requesting an advance. (Pl.'s Ex. A-1., Collins Dep. 50.) After receiving a negative response, the plaintiff wrote the April 18 letter arguing that he qualified for an advance under the terms of Directive No. 4483 because "the proposed documents would be required by the courts and they cannot be replicated longhand." At some point before withdrawing the OTSC, he gave Heady the original OTSC and asked him for photocopies or an advance. At another point before withdrawing the OTSC, he asked McConnell for photocopies or an advance and tried to show him the OTSC.

The plaintiff contends that these communications apprised the defendants of his situation because the OTSC itself

specified that the plaintiff was to serve "a signed and executed copy of this Order to Show Cause, the petition and any supporting papers" upon the named respondents and the State Attorney General on or before April 29, 2005. (Pl.'s Decl. ¶ 2; Defs.' Ex. D.) The plaintiff also points out that making carbon copies of the OTSC would have required him to forge a Supreme Court Justice's signature. (Pl.'s Dec. ¶ 3.) The defendants respond that the plaintiff never reported to corrections officials any efforts to obtain permission from the court to serve longhand carbon copies of the OTSC, using the symbol "/s/" or the equivalent to stand for the judge's signature. (Defs.' 56.1 Statement ¶ 21.)

Courts in this Circuit have held that prison officials may require prisoners to provide documentation that photocopies are required by the courts before providing them with free photocopies. Collins, 438 F. Supp. 2d at 416; see also Renelique v. Duncan, No. 03 Civ. 1256, 2007 WL 1110913, at *9 (N.D.N.Y. Apr. 12, 2007) (holding that prison official reasonably and in good faith required plaintiff to provide documentation that each of the plaintiff's documents, which consisted of 400-500 pages, was required by the courts). The Fishkill Law Library reasonably required the plaintiff to comply with Directive No. 4483 by furnishing documentation that the

photocopies were required by the court and that the OTSC could not be replicated longhand.  Collins, 438 F. Supp. 2d at 416.

It is clear that Collins did provide the OTSC to the Law Library staff because he received one free copy.  He also alleges that he attempted to have McConnell review it.  Chief Judge Mukasey concluded that "[t]he OTSC itself was clear on its face that Collins had to serve 'a signed and executed copy' of the OTSC [], making it obvious that the order was a document that '[could] not be replicated longhand.'"  Collins, 438 F. Supp. 2d at 416-17 (citation omitted).  Directive No. 4483 does not state that inmates must procure a court order to show a need for photocopies, only that they must provide documentation that "photocopies of specific documents are required by the courts." (Pl.'s Ex. A.); see also Collins, 438 F. Supp. 2d at 417.  It is also not clear that requiring a prisoner to obtain an additional court order when the prisoner has a short span of time in which to effect service would serve a legitimate penological purpose. See Collins, 438 F. Supp. 2d at 417.  This is not a case such as Renelique v. Duncan, 2007 WL 1110913, in which the plaintiff wanted to make photocopies of 400-500 pages of documents and had provided no indication from the court that photocopies were required.  Here, the plaintiff requested six copies of a twenty-five page submission, which included the OTSC and other supporting papers.  The text of the OTSC plainly stated that the

plaintiff was to serve copies of the "signed and executed" OTSC, the petition, and any supporting papers, making clear that the plaintiff needed photocopies, and not longhand replications, to comply with the OTSC.

The defendants' remaining arguments on this point are unpersuasive. The defendants argue that by requiring the plaintiff to procure a court order, they were following DOCS policy on advancing funds to inmates. However, Directive No. 4483 only states that documents be "required by the courts" and that they cannot be replicated longhand. The defendants also assert that the plaintiff failed to state clearly why he could not make copies of the OTSC longhand using carbon paper, but he stated quite clearly in his April 18 letter that the OTSC could not be copied longhand.

It is less clear whether the staff of the Fishkill Law Library acted deliberately and maliciously in denying the plaintiff's requests. The defendants argue that they cannot have acted deliberately and maliciously when they were not even put on notice that failing to provide the plaintiff with photocopies of the OTSC would result in the dismissal of his Article 78 proceeding. Even if they did read the OTSC, the defendants assert, they were not placed on notice about the consequences of failure to effect proper service because the OTSC is silent on that point. Moreover, they made a reasonable

request that the plaintiff inform the court that he lacked the
funds to make photocopies.  The plaintiff counters that the Law
Library was put on notice because the OTSC specified that copies
needed to be served by April 29, 2005, and that the proceeding
would be decided on all papers submitted before June 3, 2005.
The Court could not conclude, as a matter of law, that bringing
the OTSC to the attention of the Law Library staff was
insufficient notice that the plaintiff's proceeding would be
dismissed if photocopies of the OTSC could not be served upon
the proper parties.

    The defendants nonetheless argue that the claims against
Good, Manning, and McConnell must be dismissed because the
plaintiff has not demonstrated that any of them acted as
decision makers on the plaintiff's requests for a photocopying
advance.  The plaintiff, however, has created a genuine issue of
material fact whether McConnell acted as a decision maker
because the plaintiff testified in his deposition that the
plaintiff regularly gave McConnell request slips, that he
specifically requested photocopies of the OTSC from McConnell,
and that McConnell directly denied his requests.

    As the defendants have pointed out, however, the plaintiff
has not adduced any admissible evidence that Good and Manning
denied the plaintiff's requests, and Good and Manning denied
having received any requests for an advance from the plaintiff

in the course of the grievance proceeding.[2]  The plaintiff offers

the June 3 letter to Good, but any failure by Good to respond to

this letter cannot support his denial of access to the courts

claim because it would not have caused the dismissal of the

plaintiff's proceeding, given that he withdrew the OTSC on May

27 and the correspondence related to a different proceeding.

Nevertheless, Good and Manning may still be liable as

supervisors.  A supervisor can be found liable for a

constitutional violation if the defendant: "(1) directly

participated in the violation; (2) failed to remedy the

violation after learning about it through a report or appeal;

(3) created a custom or policy fostering the violation or

allowed the custom or policy to continue after learning about

it; or (4) was grossly negligent in supervising subordinates who

caused the violation."  Sealey v. Giltner, 116 F.3d 47, 51 (2d

Cir. 1997) (quoting Williams v. Smith, 781 F.2d 319, 323-24 (2d

Cir. 1986)).  According to the plaintiff, Good and Manning had

decision making authority over granting advances to prisoners by

virtue of their positions as Law Library Administrator and

Supervisor, respectively, and they should therefore be held

liable as supervisors because they learned that he had been

_____

[2] The note from Heady about Good is inadmissible hearsay.  Similarly, Good's denial in the course of the grievance proceeding was based on a statement of a supervisor and is also inadmissible hearsay.  But the plaintiff points to no conversation with Good and there is no documentary evidence of requests to Good in connection with the OTSC.

denied an advance and failed to remedy the situation. None of the plaintiff's communications prior to May 27, however, were directed specifically to either Good or Manning, Good and Manning denied having received any requests, and the plaintiff offers no contrary admissible proof that they did. Even though Good and Manning may have had the power to grant advances for legal photocopies, the plaintiff cannot establish supervisory liability without showing that they were aware of the requests. See, e.g., Applegate v. Annucci, No. 02 Civ. 276, 2008 WL 2725087, *18 (N.D.N.Y. July 10, 2008) (letter written to superintendent, without response, was insufficient to find personal involvement or awareness on behalf of superintendent); Amaker v. Goord, No. 98 Civ. 3634, 2002 WL 523371, *16 (S.D.N.Y. Mar. 29, 2002) (letters sent to commissioner, where letters were delegated to other prison officials, were insufficient to establish supervisory liability); Greenwaldt v. Coughlin, 93 Civ. 6551, 1995 WL 232736, *4 (S.D.N.Y. Apr. 19, 1995) (same); cf. U.S. ex rel. Larkins v. Oswald, 510 F.2d 583, 589 (2d Cir. 1975) (superintendent and commissioner found personally liable for disciplinary action taken by subordinates where regulations specified that superintendent was responsible for actions taken by designated subordinates, superintendent confirmed the action, and commissioner received official report of the action). Here, the plaintiff has made no such showing. Accordingly, the

plaintiff has failed to present any evidence that Good and
Manning were personally liable, and his claims against those two
defendants must be dismissed.

**2.**

The defendants also argue that any showing that their
refusal to provide the plaintiff with an advance caused the
dismissal of the plaintiff's petition does not save the
plaintiff's access to the courts claim because the underlying
claims in his state court petition were "patently not
meritorious." Therefore, they argue, he has not shown an actual
injury.[3]

The Supreme Court has made clear that a plaintiff seeking
to establish a denial of access to the courts claim must
"identify a 'nonfrivolous,' 'arguable' underlying claim."
Christopher v. Harbury, 536 U.S. 403, 415 (2002) (citing Lewis,
518 U.S. at 353 & n. 3); see also Benjamin, 264 F.3d at 186. In
the context of setting forth the standard for dismissal of an *in
forma pauperis* action under 28 U.S.C. § 1915(e)(2)(B)(I), the
Court of Appeals for the Second Circuit has explained that "[a]n
action is 'frivolous' when either: (1) the factual contentions

---

[3] The defendants also argue that the plaintiff's incarceration in SHU
for six months was not a violation of due process because it did not impose
"atypical and significant hardship on the inmate in relation to the ordinary
incidents of prison life." Sandin v. Conner, 515 U.S. 472, 484 (1995).
However, the petitioner's claim is that he was denied access to the courts to
present his challenge to his incarceration, not that the underlying
disciplinary incarceration was a violation of due process.

are clearly baseless, such as when allegations are the product of delusion or fantasy; or (2) the claim is based on an indisputably meritless legal theory." <u>Livingston v. Adirondack Beverage Co.</u>, 141 F.3d 434, 437 (2d Cir. 1998) (internal quotations and citations omitted). A legal theory is "indisputably meritless" when it "lacks an arguable basis in law, or a dispositive defense clearly exists on the face of the complaint." <u>Id.</u>

The plaintiff's Article 78 petition claims that he was disciplined at Gowanda in violation of N.Y. Corrections Law § 138[5] and due process because he had not been informed in advance of the rules. N.Y. Corrections Law § 138[5] provides: "No inmate shall be disciplined except for a violation of a published and posted written rule or regulation, a copy of which has been provided the inmate." N.Y. Corrections Law § 138[1] also provides, in pertinent part: "All institutional rules and regulations defining and prohibiting inmates misconduct shall be published and posted in prominent locations within the institution . . . ." If the plaintiff was in fact disciplined for a violation of a rule or regulation that had not been posted in a prominent place, or if the plaintiff had not been provided with a copy that contained the rule or regulation, the disciplinary action would have violated § 138[5] irrespective of whether the plaintiff knew or should have known that the conduct

was proscribed.  <u>Collins v. Hammock</u>, 417 N.E.2d 1245, 1247 (N.Y. 1980); <u>Barnes v. Smith</u>, 496 N.Y.S.2d 124 (App. Div. 1985).

The petition alleges that the disciplinary actions taken against the plaintiff violated § 138[5] and his due process rights because Gowanda officials gave him outdated and incomplete rules and regulations books and did not post the rules and regulations in a conspicuous location.  The plaintiff alleges in the petition that when he arrived at Gowanda on January 21, 2004, he received "two (2) rules and regulations books namely, 'Standards of Inmate Behavior – All Institutions' and 'Gowanda Correctional Facility Inmate Orientation Handbook' being the January 1999 edition."  (Defs.' Ex. D.)  The petition does not specify which edition of the "Standards of Inmate Behavior" he received, although the petition alleges that the plaintiff did not receive "a new, complete and contemporaneous rule book," despite repeated requests to be provided with one. (Defs.' Ex. D.)  The petition also alleges that from April 27, 2004 to the time the petition was filed, the plaintiff was "repeatedly cited, infracted and punished for the violation of unwritten rules that are neither conspicuously posted for the inmates edification."  (Defs.' Ex. D.)  The petition further alleges that because of the failure by Gowanda officials to provide him with an updated rule book and to conspicuously post

them, "he was not informed in advance of such rules" before Gowanda officials disciplined him for violating them.

The infractions for which Gowanda officials disciplined the plaintiff are all proscribed by rules and regulations contained in the DOCS Standards of Inmate Behavior.[4] See N.Y.C.R.R. § 270.2. The defendants allege that no changes to the DOCS Standards of Inmate Behavior took place between January 21, 2004, the date the plaintiff entered Gowanda, and February 22, 2005, the date the Inmate Misbehavior Reports were issued. However, the defendants do not explain whether any changes took place prior to January 21, 2004, nor do they supply any facts indicating that the plaintiff's claim that he received an outdated and incomplete copy of the Standards of Inmate Behavior book was clearly baseless. The defendants also do not provide any facts suggesting that the plaintiff's claim that Gowanda officials did not post in a conspicuous location the rules for which he was infracted clearly lacked a basis in fact.

It could not be said that the plaintiff's claim on the OTSC is based on an indisputably meritless legal theory. It would have been necessary, at the very least, to determine which rules the plaintiff was given and whether those rules were in fact the

---

[4] The plaintiff was found guilty of Property Damage or Loss (Rule 116.10), Counterfeiting or Forgery (Rule 116.12), Unauthorized Legal Assistance (Rule 180.17), Demonstration (Rule 103.12), Contraband (Rule 113.23), Other Inmate Crime Information (Rule 113.27), and False Statements or Information (Rule 107.20). (Defs.' Ex. B.)

rules that were used as the basis for the plaintiff's
discipline, and whether those rules were posted. This was not a
claim that could have been dismissed as frivolous based on the
OTSC, and the state court did not dismiss the OTSC as frivolous,
but rather dismissed it because the plaintiff did not serve
copies of it on the respondents. The constitutional right of
access to the courts provides prisoners with an opportunity to
present their claims to a court to have them decided, and it is
no defense that a court may eventually have denied the claims on
the merits.

Due process requires prison officials to provide inmates
with adequate notice of what conduct is prohibited. Chatin v.
Coombe, 186 F.3d 82, 87 (2d Cir. 1999) (citing Kolender v.
Lawson, 461 U.S. 352, 357 (1983)); Richardson v. Coughlin, 763
F. Supp. 1228, 1234-35 (S.D.N.Y. 1991). Furthermore, the
punishment of an inmate in violation of § 138[5] deprives the
inmate of a liberty interest in not being disciplined without
notice of the rule or regulation the inmate is deemed to have
violated. Hodges v. Jones, 873 F. Supp. 737, 745-46 (N.D.N.Y.
1995); see also Duckett v. Ward, 458 F. Supp. 624, 625-26
(S.D.N.Y. 1978). Therefore, the plaintiff's allegations that
Gowanda prison officials violated § 138[5] and due process do
not lack an arguable basis in law. The plaintiff has thus
raised a genuine issue of material fact that the failure to

provide him with a photocopying advance frustrated his pursuit

of a nonfrivolous legal claim.[5]

**B.**

The papers submitted by the plaintiff in opposition to the

defendants' motion for summary judgment mention the denial of

access to the courts claim arising out of the refusal to provide

him with stiff-barreled pens with which to make carbon copies.

The papers also name Mr. Larkin, Deputy Superintendent of

Programs at Fishkill, as a defendant.  However, the previous

opinion by Chief Judge Mukasey dismissed the plaintiff's stiff-

barreled pens claim, Collins, 438 F. Supp. 2d at 418, as well as

all of the plaintiff's claims against the non-library

defendants, which included Larkin, id. at 422, for failure to

state a claim upon which relief can be granted.  The plaintiff

therefore cannot reassert these claims.

**C.**

The defendants further argue that summary judgment should

be granted on the First Amendment retaliation claim involving

the destruction of his typewriter because the plaintiff has

---

[5] In the plaintiff's declaration, he introduces a retaliation theory to
bolster the claims in his Article 78 petition.  The plaintiff argues that
Gowanda officials disciplined him because they were retaliating against him
for previous reports that the plaintiff had made to the F.B.I. that Gowanda
officers and staff were guilty of discrimination.  It is unnecessary to
consider this claim because the Court has concluded that the plaintiff's
Article 78 petition was not frivolous.  In any event, the Court would not
consider the merits of the plaintiff's new claim because the Article 78
petition says nothing about retaliation, and the plaintiff could not now
demonstrate that the original petition was not frivolous by raising a new
theory that has no relevancy to his original claims.

agreed to withdraw that claim.  The plaintiff indicated in his

deposition that he was "in a position to withdraw" that claim

against the three remaining defendants, Good, Manning, and

McConnell, because he did not have any evidence against them.

The plaintiff briefly mentions the typewriter incident in his

statement of facts, but the facts stated do not argue the merits

of the retaliation claim nor respond to the defendants'

assertion that the plaintiff had agreed to withdraw the claim.

(See Decl. in Opp'n to Defs.' Mot. for Summ. J. ¶ 10).  His

brief also does not mention the retaliation claim and argues

only that summary judgment for the defendants should not be

granted on his denial of access to the courts claim.  Under

these circumstances, the Court finds that the plaintiff has

abandoned his First Amendment retaliation claim and therefore

grants summary judgment for the defendants on this claim.  See

Bronx Chrysler Plymouth, Inc. v. Chrysler Corp., 212 F. Supp. 2d

233, 249 (S.D.N.Y. 2002) (dismissing claim as abandoned where

plaintiff made no argument at all in support of claim in summary

judgment opposition papers); Anyan v. New York Life Ins. Co.,

192 F. Supp. 2d 228, 237 (S.D.N.Y. 2002) (dismissing claim as

abandoned where plaintiff failed to address claim in summary

judgment opposition papers and did not present specific evidence

on the elements of the claim).  Moreover, because the plaintiff

has offered no evidence to support this claim, it should be dismissed in any event.

**D.**

The defendants also argue that the defendants are entitled to qualified immunity because it was reasonable for them to believe that their actions did not violate clearly established law.

The doctrine of qualified immunity provides "that government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established . . . constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). "The qualified immunity standard gives ample room for mistaken judgments by protecting all but the plainly incompetent or those who knowingly violate the law." Hunter v. Bryant, 502 U.S. 224, 229 (1991) (per curiam) (internal citation and quotation marks omitted).

Courts perform a two-step analysis to determine whether an official is entitled to qualified immunity. Saucier v. Katz, 533 U.S. 194, 201-02 (2001); Loria v. Gorman, 306 F.3d 1271, 1281 (2d Cir. 2002). First, the Court must undertake a threshold inquiry into whether the plaintiff's allegations, if true, establish a constitutional violation. Saucier, 533 U.S.

32

at 201.  If the plaintiff's allegations do not state a constitutional claim, "there is no necessity for further inquiries concerning qualified immunity."  Id.  Similarly, if the plaintiff's constitutional claims are procedurally barred, or have already been disposed of in a motion for summary judgment, the Court need not reach the question of qualified immunity.  Second, if a violation could be made out on a favorable view of the parties' submissions, the next step is to ask if the right was "clearly established" at the time it was allegedly infringed.  Id.  "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted."  Id. at 202.

Because the Court grants summary judgment dismissing all of the plaintiff's claims against Good and Manning, the Court need not address whether those two defendants would be entitled to qualified immunity.  However, the Court has not dismissed the plaintiff's remaining denial of access to the courts claim against McConnell.  Because a prisoner's right of access to the courts was clearly established and because it was not objectively reasonable for a prison official intentionally to impede the plaintiff's access to the courts by denying him a photocopying advance and by requiring him to obtain an additional court order to receive an advance to make copies of a

signed OTSC that could not be copied longhand, McConnell is not entitled to qualified immunity as a matter of law. <u>Collins</u>, 438 F. Supp. 2d at 421. At the very least, there are issues of fact as to what the plaintiff told McConnell and McConnell's level of awareness that denying copies would result in denial of the OTSC. Based on the plaintiff's testimony, the Court could not conclude as a matter of law that it would not have been clear to a prison official in defendant McConnell's position that denying the plaintiff copies of the OTSC was unlawful under the circumstances he confronted.

The defendants argue that it is clearly established law that inmates have no constitutional right to free photocopies. <u>See</u> <u>Gittens v. Sullivan</u>, 670 F. Supp. 119, 122 (S.D.N.Y. 1987), <u>aff'd</u>, 848 F.2d 389 (2d Cir. 1988); <u>Ragland v. Keane</u>, No. 95 Civ. 4893, 1996 WL 655810, at *1 (S.D.N.Y. Nov. 12, 1996); <u>Dugar v. Coughlin</u>, 613 F. Supp. 849, 854 (S.D.N.Y. 1985). However, the cases which have addressed this issue at any length held that reasonable charges for photocopies were permissible because there were other alternatives available for inmates to obtain access to the courts, such as making carbon copies or using a typewriter. <u>See</u> <u>Gittens</u>, 670 F. Supp. at 122; <u>Dugar</u>, 613 F. Supp. at 854. Indeed, the existence of Directive No. 4483 affirms this by providing for encumbrances when "photocopies of specific documents are required by the courts that cannot be

replicated longhand." (Pl.'s Ex. A-3.) Considering that Directive No. 4483 does not require inmates to obtain a court order in order to obtain an advance for photocopies, and that the plaintiff supplied a court order which indicated that photocopies of the order would be needed to effect proper service, it would have been clear to a reasonable officer that denying the plaintiff an advance for photocopies was unlawful. Therefore, McConnell is not entitled to summary judgment finding that he is entitled to qualified immunity.

### CONCLUSION

The Court has considered all of the arguments of the parties. To the extent not specifically addressed above, the remaining arguments are either moot or without merit. For the foregoing reasons, the defendants' motion for summary judgment is **granted** except for the plaintiff's denial of access to the courts claim against McConnell arising out of the Erie County OTSC. The Clerk is directed to close Docket No. 40.

SO ORDERED.

Dated:     New York, New York
           September 20, 2008

                              _____
                              John G. Koeltl
                              United States District Judge